UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEPHEN M. BLOODWORTH,

    Plaintiff,

    v.    Case No. 10-C-0273

VILLAGE OF GREENDALE and
MILWAUKEE COUNTY,

    Defendants.

**DECISION AND ORDER GRANTING VILLAGE OF GREENDALE'S
MOTION FOR JUDGMENT ON THE PLEADINGS AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I. PROCEDURAL BACKGROUND**

On March 30, 2010, the plaintiff, Stephen M. Bloodworth ("Bloodworth"), filed a Complaint in the United States District Court for the Eastern District of Wisconsin against the defendants, the Village of Greendale, Wisconsin ("Greendale"), and Milwaukee County, Wisconsin ("Milwaukee County"), claiming civil rights violations pursuant to 49 U.S.C. § 1983. Bloodworth is seeking the return of three firearms, $2,500 in actual costs, $5,000 in estimated expenses, and $2,000,000 for "pain, suffering, [] loss of amenity[,] and punitive damages. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. All parties have consented to magistrate judge jurisdiction. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b)(1).

On September 23, 2010, Greendale filed a motion to dismiss Bloodworth's Amended Complaint, and Bloodworth filed a motion for summary judgment against Greendale and Milwaukee

County.[1] On September 29, 2010, Bloodworth filed a motion to suppress his deposition testimony. Only Greendale responded to Bloodworth's respective motions. For the reasons that follow, Greendale's motion for judgment on the pleadings will be granted, and Bloodworth's motion for summary judgment will be denied.

## II. DISCUSSION

**A. Greendale's Motion for Judgment on the Pleadings.**

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties have filed the complaint and answer. *See* Fed. R. Civ. P. 12(c). When ruling upon a Rule 12(c) motion for judgment on the pleadings, courts employ the same standard that applies when reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007)). Like Rule 12(b) motions, courts must view the facts in the complaint in the light most favorable to the nonmoving party and will grant the motion "'only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'" *Id.* (quoting *Northern Indiana Gun and Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998)). Thus to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved. However, the court is not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claims or to assign any weight to unsupported conclusions of law. *Id.*

A motion pursuant to Rule 12(b)(6) requires the court to decide whether the plaintiff's pleadings actually state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[1] Because Greendale filed an answer to Bloodworth's Amended Complaint on August 31, 2010, its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) will be treated as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

2

plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to the probability standard. *Id.* A plaintiff's complaint must contain enough "[f]actual allegations . . . to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the plaintiff must "'nudge[] his claims' . . . 'across the line from conceivable to plausible.'" *Iqbal*, ___ U.S. ___, 129 S. Ct. at 1950-51.

For purposes of this motion, Bloodworth's claims against Greendale will be liberally construed and viewed in the light most favorable to Bloodworth as the nonmoving party. *See Byers v. Basinger*, 610 F.3d 980, 986 (7th Cir. 2010) ("a court should be willing to construe more liberally a pro se litigant's claims than those of a counseled litigant"). Bloodworth's Amended Complaint alleges the following against Greendale:

> 1.  Oct, 7, 2009, arrested at gunpoint by [Greendale Police Department ("GPD")]. Not read my rights nor was I asked to explain what had happened.
>
> 2.  GPD made no attempt to verify an actual emergency. GPD assumed an emergency and dispatched "SWAT." GPD assumed a crime. GPD assumes 911 caller is a victim.
>
> 3.  GPD did nothing to defuse this event, instead GPD attempted to set up a standoff.
>
> 4.  I took it on myself to defuse this event by simply walking outside when I realized my residence was being "targeted." GPD report shows that SWAT members were still in the process of responding at this time.
>
> 5.  GPD demanded entrance into my residence not knowing if a crime had occurred or if any real fire arm was inside. GPD seized 3 fire arms.
>
> 6.  Taken to GPD Safety Center, booked, not offered a phone call, asked to take a breathalyzer test although I showed no signs of intoxication. Took test anyway, at 0.00.

3

> 7. Made a statement, told GPD Officer that I acted in self defense, GPD continued to assume a crime on my part. GPD attempted to charge a felony.
>
> . . .
>
> 13. Told by GPD that I had to petition the Circuit Court to get fire arms back.
>
> . . .

(Am. Compl. ¶¶ 1-7, 13.)

Under 42 U.S.C. § 1983, the doctrine of respondeat superior is not a basis for rendering municipalities liable for the constitutional torts of their employees. *See Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978). Instead, the government as an entity is responsible under § 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694; *see also Los Angeles County v. Humphries*, ___ U.S. ___ (2010), 131 S. Ct. 447, 464 (2010) (stating that "civil rights plaintiffs suing a municipal entity under 42 U.S.C. § 1983 must show that their injury was caused by a municipal policy or custom"). The Supreme Court reasoned that § 1983's language could not "be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor." *Monell*, 436 U.S. at 692.

A municipality can be held liable under § 1983, however, for its own violations of federal law. *See id.* at 683. As such, "municipal liability under 49 U.S.C. § 1983 is limited to deprivations of federally protected rights caused by action taken 'pursuant to official municipal policy of some nature . . . .'" *Pembaur v. City of Cincinnati*, 475 U.S. 469, 471 (1986) (quoting *Monell*, 436 U.S. at 691). The Supreme Court explained what constitutes a municipality's own violation under § 1983:

> Local governing bodies [] can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where [] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and

> promulgated by that body's officers. . . . [Local governments may also be sued for] constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell*, 436 U.S. at 690-91. Requiring the plaintiff to identify a policy "ensures that a municipality is held liable only for those deprivations resulting from the decisions . . . of those officials whose acts may fairly be said to be those of the municipality." *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997) (citing *Monell*, 436 U.S. at 694). A municipality or other local governmental unit may violate § 1983 three different ways:

> (1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a "wide-spread practice" that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a "custom or usage" with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with "final decision policymaking authority."

*Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (quoting *McTigue v. City of Chi.*, 60 F.3d 381, 382 (7th Cir. 1995)). The "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

Viewing Bloodworth's pleadings liberally and in the light most favorable to him, it appears that Bloodworth alleges two constitutional violations against Greendale. First, I construe Bloodworth's claim that he was "[n]ot read [his] rights" (Am. Compl. ¶ 1) to be an allegation that the plaintiff was not read a *Miranda* warning, thereby violating his Fifth Amendment right. *Miranda v. Arizona*, 384 U.S. 436 (1966). Pursuant to the Supreme Court's ruling in *Miranda*, an individual subjected to custodial interrogation must first be advised that he has the right to remain silent, that anything he says can and will be used against him in a court of law, that he has the right to an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning. *Id.* at 479. Second, Bloodworth alleges that "GPD demanded entrance into my residence not knowing if

5

a crime had occurred or if any real fire arm was inside. GPD seized 3 fire arms." (Am. Compl. ¶ 5.) It appears that Bloodworth is alleging a violation of his Fourth Amendment protection from unreasonable searches and seizures. "The security of one's privacy against arbitrary intrusion by the police—which is at the core of the Fourth Amendment—is basic to a free society." *Wolf v. Colorado*, 338 U.S. 25, 28 (1949).

However, Bloodworth's allegations fall short of alleging § 1983 liability on the part of Greendale pursuant to *Monell*. First, Bloodworth does not allege that any constitutional violations were caused by an express municipal policy. Even if I found Bloodworth to have sufficiently identified a municipal policy in his Amended Complaint, Bloodworth has still failed to establish that any such policy is attributed to any municipal policymaker.

Bloodworth's allegations also fail to establish that Greendale violated his constitutional rights through any widespread practice. While a widespread practice may evince a true municipal policy, the Seventh Circuit has recognized that the unifying theme in § 1983 decisions is the "acknowledgment that the word 'widespread' must be taken seriously." *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006). Therefore, the "plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Id.* A § 1983 claim must contain "'evidence that there is a true municipal policy at issue, not a random event.'" *Id.* (citing *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005)). Not only does Bloodworth not allege that a GPD practice caused the alleged constitutional violation, he also does not allege that any such practice was pervasive enough to impose § 1983 liability on Greendale. Rather, Bloodworth seeks relief based solely on a random isolated event, which, by definition, cannot constitute a "widespread" practice.

Third, Bloodworth failed to allege that any constitutional injury was caused by a person with "final decision policymaking authority." Bloodworth's claims center on the actions by members of the GPD. In his later submissions, Bloodworth appears to argue that GPD policies regarding the following resulted in alleged constitutional deprivations: arrest, search, and seizure, treatment of detainees at GPD, and the administration of breathalyzer tests. The Seventh Circuit has made clear that not all police officers have "final policy making authority," and therefore an individual may not establish municipal liability under this theory where "the only individuals even arguably responsible for the alleged constitutional violations were subordinate police officers." *See Donovan v. City of Milwaukee*, 17 F.3d 944, 954 (7th Cir. 1994). Bloodworth has not shown that the officers arguably responsible for the alleged constitutional violations were vested with any "final policymaking authority," thereby imposing liability under *Monell*.

Therefore, the plaintiff cannot maintain a § 1983 claim against Greendale. Bloodworth's Amended Complaint contains allegations against Greendale that center on a single incident and does not allege any pattern or practice of the GPD. Because Bloodworth does not articulate a specific policy or a pattern or practice that caused a constitutional violation, Bloodworth cannot establish the requisite direct causal link required to state a claim for municipal liability pursuant to § 1983. Accordingly, Greendale's motion for judgment on the pleadings will be granted.

**B. Bloodworth's Summary Judgment Motion.**

A district court must grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, a court may consider any material that would be admissible or usable at trial provided the material is properly authenticated and admissible exhibits or documents. *Latosky v. Strunc*, Case No. 08-C-771, 2009 U.S. Dist. LEXIS 33413, at *12 (E.D. Wis. Apr. 21, 2009) (citing *Aguilera v. Cook County Police & Corrs. Merit Bd.*, 760 F.2d 844, 849 (7th Cir. 1985)).

In support of his motion, Bloodworth attached a number of police reports as exhibits. Greendale objects to the admissibility of the police reports submitted by Bloodworth because they are unsworn and unauthenticated. Police reports may be admissible as a business record pursuant to Federal Rule of Evidence 803(6). But, at the summary judgment stage, "the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge that the documents were admissible business records." *Woods v. City of Chi.*, 234 F.3d 979, 988 (7th Cir. 2000). Bloodworth did not attach any affidavit to the police reports—much less an affidavit sworn to by a qualified person. In addition, Bloodworth certainly is not a custodian and has no personal knowledge of the incident reported by the police officers. Therefore, the police reports are not admissible for purposes of summary judgment, and the court will not consider the unauthenticated documents.

Bloodworth does not offer any evidence aside from the inadmissible police reports in support of his motion for summary judgment. Accordingly, Bloodworth's motion for summary judgment will

be denied, as to both Greendale[2] and Milwaukee County, because Bloodworth has submitted no admissible evidence demonstrating that he is entitled to judgment as a matter of law. Because Bloodworth has not demonstrated that he is entitled to judgment as a matter of law, he is not (at this time) entitled to the relief he seeks. Thus, Bloodworth's motion for the return of property, to wit, three firearms (Docket No. 3 at 1), will also be dismissed at this time.

**C. Bloodworth's Motion to Suppress.**

Finally, Bloodworth filed a motion to suppress, requesting that his "deposition be suppressed and no information in that deposition be used against [him], in this case, or [in] any **further investigation** by GPD." (Def.'s Mot. to Suppress 2.) He contends that suppression is appropriate pursuant to Civil Local Rule 26(e)(1)(D)(ii). However, Rule 26(e)(1)(D)(ii) applies only when the court enters a protective order "regarding confidentiality of all documents produced in the course of discovery, all answers to interrogatories, all answers to requests for admission, and all deposition testimony." Civ. L.R. 26(e)(1). Because the court has not entered a protective order in this case (*see* Docket No. 25 at 1), Bloodworth's motion to suppress pursuant to Rule 26(e)(1)(D)(ii) will be denied.

However, Federal Rule of Civil Procedure 26(c) permits any person from whom discovery is sought to move for a protective order, and the court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c). In determining whether good cause exists, a court may balance the need of the party seeking the discovery against the burden on the party responding. *See In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1215-16 (D.C. Cir. 2004).

---

[2] Although Greendale will be dismissed from this action as previously discussed, Greendale was the only defendant that responded to Bloodworth's motion. Given the inadmissibility of Bloodworth's only proffered evidence, even if Greendale's Rule 12(c) motion was denied, Bloodworth's motion for summary judgment as to Greendale would still be denied.

Generally, a motion for a protective order must be filed before the discovery is to occur. To be sure, on August 24, 2010, Bloodworth filed a document titled "Objection," opposing the defendants' taking of his deposition. The court construed this motion as a motion for a protective order and denied his motion on August 26, 2010. At that time, Bloodworth's motion contained only broad allegations of harm, which was insufficient to satisfy his burden of proving "good cause."

In his present motion, Bloodworth includes more specific allegations. In particular, Bloodworth states the following:

> 8. There is no basis in law to ask: where any firearm was purchased, how many firearms I have ever owned, whether or not in any past incident my firearms were loaded or not, or any other question not directly related to this case.

(Def.'s Mot. to Suppress ¶ 8.) In light of the fact that Bloodworth was charged with disorderly conduct in connection with the events giving rise to the present action (Am. Compl. ¶ 9), he contends that his deposition was used as a means to further investigate him.

After reviewing the plaintiff's motion, I remain persuaded that the plaintiff has not set forth the requisite "good cause" to justify the entry of a protective order relating to the specified information. First, his seeking a protective order with respect to "any other question not directly related to this case" is too broad to satisfy this burden. Second, his motion for a protective order with respect to his deposition testimony relating to his firearms will also be denied. Bloodworth's allegations that reference or involve his firearms are limited to his allegations against Greendale. Because these allegations against Greendale will be dismissed (for the reasons previously stated), his motion for the entry of an order barring the use of such information contained therein in the present case is moot. Insofar as Bloodworth seeks suppression of his deposition testimony in any further investigation by GPD, his motion will be denied because Bloodworth indicates in his Amended

10

Complaint that his disorderly conduct charge was dismissed on February 8, 2010. (Am. Compl. ¶ 12.) Because there are no pending charges against Bloodworth, there is nothing from which to order that Bloodworth be protected. Accordingly, Bloodworth's motion to suppress (construed as a motion for a protective order pursuant to Federal Rule of Civil Procedure 26(c)) will be denied.

**NOW THEREFORE IT IS ORDERED** that the Village of Greendale's motion for judgment on the pleadings (Docket No. 43) be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that Bloodworth's motion for summary judgment (Docket No. 46) be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that Bloodworth's motion to suppress (motion for a protective order) (Docket No. 52) be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that Bloodworth's motion for an order for the return of his property (Docket No. 3) be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED** as to the Village of Greendale;

**IT IS FURTHER ORDERED** that on January 20, 2011 at 9:30 a.m. in Courtroom 242, U.S. Courthouse, 517 East Wisconsin Avenue, Milwaukee, Wisconsin 53202, the court will conduct a conference with the remaining parties, to wit, Stephen Bloodworth and Milwaukee County, to discuss the further processing of this case to final resolution and judgment.

**SO ORDERED** this 12th day of January 2011 at Milwaukee, Wisconsin.

BY THE COURT:

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge